morning, please be seated and please call the cases on our docket for this morning. I'm expecting to use about 15 minutes in opening argument and a few minutes in rebuttal. May it please the court. Leo Mondy, then only 21 years old at the time of the incident in this case, is a college graduate with no prior criminal history, let alone any sexual criminal history. The trial court expressly found that Mr. Mondy would never make the same mistake again and for his single conviction of aggravated criminal sexual abuse in this case sentenced him to two years of probation. On what basis did the trial court conclude that Mr. Mondy would never re-offend? During the imposition of sentence, the trial court commented that she believed that Mr. Mondy had made the mistake of getting into a relationship with a girl that he should have known better not to get into a relationship with. She was 21. She told him she was 14. It's a pretty big mistake, don't you think? According to her testimony, she said that she told him that she was 14. There was no affirmative evidence presented in the defense's case, but the argument in closing was that he thought that she was older than that. But in any event, the particular facts of the circumstances behind Mr. Mondy's background and history, I believe, went to the trial court's conclusion that... What facts, in other words? Oh, sure. Mr. Mondy is a college graduate. Okay, but stop there. What's that have to do with recidivism? Are you telling me that if you graduate from college, then that means you're not going to maybe do a sexual act like this again? No, not at all. Okay, so let's put that to the side. We're talking about the totality of the circumstances. If you're a college graduate, that means nothing. People who go to college who don't go to college, I don't understand how that could... I think it just goes to show the familial history that he had, the social history that he has. Let's talk about that. Let's talk about each of those factors, because even when you're arguing this together, but even separately or together, this type of conduct crosses all those lines. And just because somebody goes to college because it's their first time, because they're a day laborer, because they come from a good family, that has not stopped this type of conduct from going on. And to say that those together would somehow mean come to a conclusion, I'm trying to understand that. Well, I think that in any case that involves a proportionate penalties analysis, in particular relating to the rehabilitation component of that clause, the courts regularly look to the defendant's background, their family history, the fact that there's a strong family support. This court just did that in People v. Harris, looking to the facts of the murder defendant's prior criminal history to see if he has rehabilitative potential. And in that case, this court found that he did. And they looked at his lack of criminal history, his youth, his family involvement, and went to say that mandatory sentencing provisions limited the trial court's ability to properly consider that defendant's rehabilitative potential. And so it's an overarching totality of the circumstances case. In that case, you also can say, well, the fact that he got a GED in prison doesn't mean that he's not going to murder somebody again. But it goes towards his rehabilitative potential to show that he's able to follow rules, that he is an active, engaged member of society, that the fact that he was 21 at the time of this isolated incident, but is able to follow rules in every other aspect of society and not get into any trouble, has family support, suggests that in 10 years or 20 years or 30 years, he's not going to be a threat to the public that the legislature was trying to target in this case. So how do you address the multiple cases, including the Illinois Supreme Court, that say the SORA statute is not punitive? Well, the Illinois Supreme Court hasn't spoken on this issue in quite some time. They determined with respect to the adult SORA provisions, the last time they spoke on the issue was in Malchow, and that still only involved the 10-year registration requirement, and it didn't involve all the burdens and restrictions that are now in play. In 2011 and 2013 in particular, many more burdens were amended and added to SORA, and so that the analysis in Malchow doesn't really apply it more. And in this court, in the appellate court, the courts have acknowledged that it has become a scheme that imposes affirmative disabilities. They haven't gone as far as to explicitly state and hold that it's punitive, but we suggest that those concerns that the appellate court has acknowledged do show that it has become punitive. Why should we be the first? Because this is the perfect example of when, as applied, the SORA, the lifetime registration requirements and restrictions are far more onerous than necessary, far more onerous than the reasonable relationship test. And what record did you build in the trial court to establish that this is the perfect case to test that? What is there in the record that would support that conclusion? Well, the pre-sentence investigation report is part of the record, and the trial court statements on the record, in which she explicitly commented that she did not believe that Mr. Mani would ever do this kind of thing again. What was it in the record other than the pre-sentence investigation and the judge's comment? What did she base that comment on? Other than his age and her perception of the circumstances that gave rise to the conviction. She did find him guilty beyond a reasonable doubt. She did, but she also, during sentencing, acknowledged that this was a circumstance that Mr. Mani most likely would not put himself into again. And while it's not explicit in the record, she did say that she considered factors in aggravation and mitigation. She was presented with the PSI, and we're supposed to presume that she read the PSI, so I would contend that she relied on the information in the PSI that sets forth his lack of criminal history, his family support, the fact that he never got involved in drugs or alcohol or gangs, that he's fully employed. And then his statement in allocution would be the only other piece of evidence in addition to those things that would indicate that he is not likely to recidivate. Didn't I gather from the sentencing hearing that what the trial court viewed as the very young victim's inappropriate behavior factored strongly into the comments that the court made? So that if you had a victim, like we have in many cases, who did not display the statements and the behavior that the trial court found so troubling, you have a completely different case. So how does the victim's behavior factor into that? I think that that might have factored into the trial judge's conclusion that Mr. Mondi just had lacks in judgment. And while that doesn't reach the level of insufficiency of evidence, it does go to his rehabilitative potential and his lack of recidivism, the potential for his lack of recidivism. Under these strange particular circumstances, it's reasonable for the judge to conclude that Mr. Mondi would never do this again because he was under the misapprehension, the faulty misapprehension, that the victim was beyond her years. I thought there was an email from her that she was 14. I don't believe that that was actually. I'm not sure that they were all text messages. I don't currently have a copy of the text messages. I'm not sure that the actual text message that was presented into evidence stated that. She did testify to that. She tested him. She communicated to him soon after they met that she was 14, which was not true. She was 12. But no one's denying that she didn't send that text message. There was no evidence presented at trial that refuted that. Therefore, he was well aware. The fact that everybody said something differently when the police were there. Again, I think that the facts of the occurrence, the proportion of penalties analysis is not just about the relationship to the type of conduct that we're talking about, the actual criminal conduct, but also about the second component of that is the defendant's rehabilitative potential. And this court has also said that that is just as important as considering the seriousness of the offense is the defendant's rehabilitative potential. And so those facts actually support the trial court's finding that he does have rehabilitative potential, that this is unlikely to recur, that this circumstance is not the type of circumstance that SOAR was meant to target. Are you now contending that this is now a penalty? Yes. SOAR is now a penalty? Yes, because of the combined added restrictions and burdens placed on registrants. It's a lifetime registration. Facially, it's a penalty, not as applied. Correct. For our due process analysis, the substantive and procedural due process is a facial challenge, and for the proportion of penalties argument, it's an as applied challenge. We would have to find that it's now a penalty. SOAR is a penalty. We have no authority to do that, do we? Our Illinois Supreme Court and the U.S. Supreme Court has said something like SOAR is not a penalty. So where do we get the authority to say it is a penalty? Sure. Well, like I said before, in Malchow, which was the last time the Illinois Supreme Court addressed the penalty component of SOAR, that was still yet a 10-year registration requirement, and it didn't have as many limits and burdens as it now imposes. In JW, which was a little bit later, the Supreme Court talked about juvenile lifetime SOAR and said that it was not a punishment. So what would make this a punishment? If it's not for a juvenile, why would it be for a 21-year-old? For juveniles, there's a mechanism to get off. For juvenile offenders, it goes away at the age of 17. For those juvenile offenders who it does apply to life, they have a mechanism to petition the court for termination after five years. And this is because the legislature has determined that with brain development and impulsivity control, there might be a reason to reevaluate that. And we would say that that would apply in this case as well. But the legislature hasn't made that determination for adults. Why should we be the ones to do it? Isn't that something that the legislature should decide on their own? In People v. Harris, this court considered that the concerns about youth brain development do extend far into mid-20s and into the age of the mid-20s.  But that's not my question. My question is, why should the legislature, why should we be telling the legislature, you know, this has to happen? When it's the legislature who put on that five years, that's something they should do in this situation. They're the ones that follow what they have said. Right, and that is something that they should do. So why should we? Because they're bound to follow the Constitution. And this court should guide them to tell them that without, you know, allowing for a termination petition, the application of SORA as it now stands does indeed violate the Constitution. And so in this case would be, again, a perfect example of when a five-year termination petition would be an adequate safety valve to prevent the constitutional infirmities here, the procedural and substantive due process violations. Would your argument be the same if the defendant was not 21 at the time of the offense? He was 26, 25, 30? I would make the same argument. I think it would be a little, I think that the research about youth brain development would be obviously less helpful in that fact pattern, which here I think it does directly apply. But I would still make the argument that the lifetime restriction imposed on someone with no criminal history, with no factors in their background to indicate that he would ever be likely to recidivate would be enough to establish the due process violations and the proportionate penalties violations under those facts. I'm calling the record a psychiatrist. Do they conduct an evaluation or a psychologist? There are no evaluations. We're saying that the court apparently is a professional that can tell, but we do have professionals whose business it is and have been trained to be able to make these determinations, and we use them all the time in sex case cases. Yet here we don't have in the record anything that would say that he's been evaluated, and yes, this is a low-risk person. We don't have that, but we have that in other cases where we're making determinations on whether somebody should be released. Well, I would have two comments to that. First of all, the trial court is in the best position to gauge the character of the defendant, and so that's why we give the trial court a lot of discretion in sentencing considerations. The trial court was completely bound by SORA, was not even allowed to consider whether it was going to be applied or not, so perhaps that was why no evidence was presented below specifically on that. Your argument is recidivism. It seems to me that to make a determination based upon without any kind of medical evaluations at all, how does that look? What are we doing really that doesn't seem to mow well with what else is in the system and the statute and the whole way that it's been directed? Well, this court has done that in a few of the more recent appellate court decisions, but found in the contrary, found that it was not disproportionate because the defendant had a lot of criminal history or because of the force used during the assault or because of the disparate ages or other factors that this court reviewed, said that the record was adequate for review because of the transcripts provided in the record and the PSI and the facts that the trial court relied on, and then used those facts to determine that, yes, the application of SORA as applied to those defendants was not disproportionate. We're asking the court to do the same analysis, but under these facts, find that the reverse is true, that they are disproportionate under the same amount of facts that the appellate court has in those cases. We're just asking for a different conclusion. Let's look at the facts. This young woman is living at home. This child is living at home. He's been here in the middle of the night, right? She's going out of her window or something to get to him. She has to be home by 6 o'clock so she's not caught. I mean, he knows these things, right? He picks her up in the middle of the night. Something's not adding up here. And, you know, it's just when the judge says that his motive was to find a girlfriend, a nice young lady, I mean, that kind of does not seem to be an appropriate way to look at this situation, no matter what, because at that time, before he was stopped by police, she had sent him a text about her age. So he knew fairly well. I mean, this is a serious offense, right? You agree with that? I'm not undermining the severity of the facts of the case, but I think that they went towards the trial court's finding that he was not a threat to society. And, in fact, the trial court sentenced him to probation, which is even less onerous than SORA. But you just said that the court had nothing to do with SORA. It had no impact on whether he was required to comply with SORA or not. So where are we going with this? You're relying on the judge's comments, but the judge's comments are completely irrelevant to the application of SORA, correct? But we're saying that they shouldn't be, because the trial court. What would give us the authority to make them relevant? Well, the fact that the SORA, as applied to this case, and facially, in the due process considerations, violates the Constitution, this court is permitted and should find that SORA is unconstitutional and should not apply as it now exists. That would put the ball back in the legislature's court to quickly fix this and provide a mechanism by which the offender could either ask for a determination at that point, then he could present facts during a hearing on whether SORA should apply, about his proclivities to commit similar offenses, about his threat to the public, about those things, or at the very least, after five years, or however long deemed adequate, petition to have the court reconsider the automatic application of SORA. But as it stands now, that the trial court is not even allowed to consider any of those facts at any point, or the defendant be allowed to present those facts, does go against our Constitution's mandate that every sentence be imposed in light of the circumstances, the seriousness of the offense, and the defendant's potential for rehabilitation. And the application of SORA under these circumstances, the application of SORA to any lifetime registrant, really actually hinders the rehabilitative potential of any individual, prevents him from going to parks, from going to any museums on a museum campus, preventing Mr. Maddy from coming here today to argue because there's a daycare center in this building, prevents him from living in certain places, working in certain places, doing certain jobs that may not even be related to children, like the use of emergency vehicles, serious restrictions and obligations on registering multiple times throughout the year, and if he fails to do any of that, subjects him to even more criminal penalties. All of those things actually go against the purpose of the aim of rehabilitation. And especially in a case here where the trial court said that it's unlikely that he would ever do this again, the application of SORA to Mr. Maddy is violative of the proportionate penalties clause and strips him of due process guarantees. Thank you. I just have one question or comment. Your opening brief is attached to it an unredacted sentencing order, and in there is the name of the victim. I think you may want to... I think that was a complete oversight. I know. I apologize. I think that should be taken care of. Absolutely. I will take care of that. Your appendix also. Okay. Yes. Sorry. Good morning once again. Mary Boland on behalf of the people. The preliminary point that the court has noticed, and I would say to this court, sorry for my voice, it's the weather, Avila Briones, and I don't know if I pronounced that case name correctly, but that's what I'm calling it, Avila Briones, cited to the Mossman case, which is in Kansas. And in the Mossman case, you had a 25-year-old offender, you had a 15-year-old victim who had a sexual relationship. And he tried to suggest to the court that the victim encouraged his behavior. That's kind of the theme running throughout the beginning of this particular brief. And Avila Briones, I thought, cited a very important section of the Mossman case when it said, adults are expected to protect children from poor judgment, not take advantage of it. That's the point. In this case, SORA is being applied exactly as it should be applied. SORA has always been about the protection of children. From the very first precursor statute, it was about child sex offenders. And individuals who are sex offending against a 12-year-old fit within SORA. So it is not as if we operate on a blank slate. We just don't. We have, as counsel said, Malshaw in 2000, but we also have Adams earlier in 1991, talking about the proper regulatory function, the goal of providing increased law enforcement monitoring in this case. Johnson in 2007 talks about, that's an Illinois Supreme Court case, talking about why we have expanded SORA to include crimes that are precursor crimes against children. But then the legislature did act. And that's something that's also being missed by some of these analyses. The legislature acted after, actually right around the time the Johnson opinion was released, and moved out of SORA the non-sexually motivated violent crimes into a violent offender registry. So it has narrowed SORA in that sense to only sexually motivated precursor crimes plus sexual crimes themselves. So there are times that it does narrow. The other narrowing that was mentioned briefly by counsel is they allow juveniles to petition off their registry. But I should point out to the court that when J.W. was decided in 2003, that's four years prior to the determination that juveniles would have a petition off their registry. That section 35 wasn't added until I think 2007. And so when J.W. is determining that lifetime registration is not punishment, it's determining that in the scheme that existed prior to the petition off the registry. So that was not the reason that the legislature, perhaps the legislature acted as a result of it, but that's certainly not the reason that the court found it to be constitutional. So what about the defendant's argument that given his background and his age and the other factors, what's wrong with a provision allowing people like him to petition after 10 years to be taken off the registry? Well, I will tell you that there is no standard or uniform to registries. And I've cited some material in the brief that talks about the different kinds of registries or at least gives you a citation to the SMART Office, which compiles research on the registry. Some registries do have tier systems. Some have risk assessment systems. Some are categorical like Illinois. The categorical type of registration that is going on in the registry as a result of your conviction and also an adjudication, that's gone on to the U.S. Supreme Court and been found to be constitutional. Is it a better policy to let someone petition off the registry after X amount of years or to let them have a risk assessment or to let them do all the things that the defendant is suggesting in these due process arguments here? Those are policy questions. And those types of questions were raised in the M.A. case, which the Supreme Court heard in 2015. So it's a very recent case. I'm painfully aware of it. Okay. I'm sorry. That's correct. I didn't take that case here in the appellate court, but I did take it to the Supreme Court. And in that case, so as the court will recall, it was a juvenile and wanted to not have to register in the violent offender registry. And the court said categorical registration is constitutional. So just like the sex offender registry, the violent offender registry, and that violent offender registry does not have an early petition off. That was part of the concern that was raised in the court, that we need to have this to make sure that it's constitutional. And the court said, no, this is a policy decision. This is a decision for the legislature. And if it gives the court some comfort, the court should know that after the M.A. case, Governor Rauner signed Public Act 990873 that just went into effect in January that does establish the sex offender registration task force. And that charge of that task force is to make recommendations to the legislature about adult offenders and whether there should be the same scheme, a different scheme, what would be the proper public policy. But in terms of what is the problem with it, that's not really the question. The question is, is it constitutional for this court? What is the problem is a public policy question, and that goes to, what is the best way or what is a better way to handle this class of offenders? So would there be a point where for somebody like Mr. Mundy, let's fast forward 20 years. He has children of his own. He can't go to their school place. Is there a point where this does become punitive in terms of its effect on his life? Well, that case is a case Mr. Mundy would have to make by coming to a court and saying, these are the facts, this is the evidence, I'm going to put this information before the court, and I'm going to make my argument. At this point, the defendant is being convicted, and despite the court's comments, and of course the people take strong issue with the court's comments, suggesting that a 12-year-old is somehow responsible for this. But beyond that, this type of setting is not the record from which you make such a determination. And I point this court to Avila Briones in 2015. There we had a 23-year-old offender. We had a 16-year-old victim. It was the exact same class 2 offense. They had crim sex abuse. No force in that case. And the court said, youths are not capable of giving sexual consent. So even though there's no force here, lifetime registration at this point, at the point of the sentencing, is not disproportionate. They didn't have to reach the constitutional question, because they found that even if it was applicable at that point, it was not disproportionate. Pollard, decided in May of 2016's Fifth District case, follows also the Avila Briones analysis. There you had an older offender and a young child. You had a predatory case. So it was, I think, an easier analysis for the court, based on whatever the record was in front of that court. But Parker is also a First District case. It's December 29th. These are cases I cited as additional authority that the court has allowed. In Parker, we had a 19-year-old offender, we had an 18-year-old victim. We had a sexual assault, but there was also force. So the court, the problem with trying to pigeonhole the Sex Offender Registration Act into a punishment conceptualization is at the time of sentencing, it is not designed or set up for that purpose. So your question is, could Mr. Mundy make a case at some point, 10, 20 years in the future, whatever it is? Obviously, it's all guesswork on the part of everyone, but my guess would be by then the legislature will have considered its public policy. In 20 years, it would be pretty fast. It was pretty quickly after the analysis of the Violent Offender Registry, and it moved pretty quickly to give the individual juveniles an off the registry. So that shows you that the public policy exists in the scheme of Illinois. At this point, the public policy is not to include adult offenders. But that may change, and that's why we have a public policy proceeding. The question here is whether it reaches that level of a constitutional violation, and I submit that there is no court in Illinois that has found that, whether it is lifetime registration for juveniles prior to the off the registry petition process, or whether it is all of these more recent cases, and we have several now, that say we're not going to reach that constitutional question because we don't have to. It's not disproportionate at this point. I'd also point out, as Justice Pierce suggested, in order to get you there, the defendant has to get you to move SORA from a civil collateral consequence of conviction to a punishment. And to get you there, it has to take jurisprudence that is not applicable in civil proceedings. So Patterson was a similar case. In 2014, the Illinois Supreme Court said you can't take a juvenile transfer law and try to feed it into Eighth Amendment jurisprudence. And that is what these defendants in the SORA cases are doing exactly, that which Patterson said you cannot do. Now, the defendants cited as additional authority, I think it's Darian Harris. That is the one case I don't have this Court's order from. Did this Court allow the authority? It's a very recent filing by the defense, but in any event. Was that the request that came in yesterday? It's a very recent filing. It might have just come in yesterday, but in any event, I checked. I don't have an order. I think they signed the order yesterday allowing it. So Darian Harris is a case that, yes, thank you. It's not my policy to ever object usually to additional authority. I think we should all have as much law as we can. So I don't think I've ever objected in my 20 years. And I certainly wouldn't object it here. I just wanted to make sure that I was okay to argue it. Defendant kind of tries to pull himself into a Miller type analysis. Remember Leon Miller, the convergence of the statutes that took this juvenile by accountability and had him facing a mandatory natural life sentence. And Darian Harris is kind of similar in that there's this application of the statutes that result in a 76-year-old sentence for the 19-year-old. So is imprisonment the same? I think Patterson said you can't take a civil statute and fit it into the punishment category. Darian Harris relies on Clemens. And Clemens said there's Patterson out there and then there's Clemens, which say that they're coextensive or that the proportion of penalties is broader in Clemens. But the way that you can harmonize them is to recognize that the question is what it applies to and that question is answered criminal penalties. And then if you're in a criminal penalty, Clemens can give you the extension to say we want to consider the rehabilitative potential of this individual. But in Patterson it's very clear the court's not going to extend Eighth Amendment type jurisprudence into civil statutes. And that's the problem for the defendants in these cases. They kind of skip over that notion and say it's a punishment because it affects him. It's not life in prison. It's not de facto life in prison. It's not remotely the same. So I make a standing argument also in my brief. Remember that this is an as-applied analysis in proportion to penalties. We have absolutely nothing that suggests he lives by a perk. He wants to live by a perk. He has ever filed to move by a perk. He's ever moved by a perk. We have no information that he has a driver's license, that he wants to renew a driver's license, that he's ever driven in his life. We don't have any information about name changes. But we do know he was in a car with the victim. He was in a car. But we don't know. And he did show a driver's license. I take it back. So he must have at least at that point a driver's license. But in any event, I've made a standing argument. I recognize that courts are allowing defendants to bundle. The reason defendants are bundling is because they can't get there from here by just claiming SORA. So now they're pulling in other criminal statutes, other civil statutes, trying to make it a scheme. And my only issue is with that, if you have a driver's license, it doesn't open the entire vehicle code for challenge every single time you get a traffic ticket. But that is what is happening here. We keep opening the door. Judicially, defendants just keep adding more. And the notion that we can get there from here is a difficult one because the Illinois Supreme Court has already given us guidance. So I'd encourage the court to look at the standing again. Even if standing isn't quite, even if you're not going to foreclose standing, it clearly on this record is not right for review because we don't have almost any information. The defendant is correct. SORA is more burdensome now than it used to be. It has many more things that are applicable. But child sex offenders have had to register since 92. The defendant committed his crimes in 2010. This is not something new to the defendant. The idea that we require social information, digital information, that is just a function of today's digital society. As we get more mobile, as we get more untethered, if you will, as we carry our computers with us everywhere and can access the Internet, the law tries to keep up. Maybe it doesn't keep up as perfectly as it could. Maybe there are public policy issues that should be addressed by the legislature. But these are not constitutional issues. And it doesn't change the regulatory function of this statute. And that's exactly what Avila Brioni's Howard and Parker have already found. Is there any point, in your view, where SORA would cross over to be punitive? You know, in the extreme, for example, if the legislature decided that people convicted of sex crimes against children should not themselves have children? Well, obviously, if there are other constitutional provisions, and that really kind of goes to some of the issues that the defendant raises in his substantive due process, that I have a fundamental right not to have to register. There are fundamental rights. They're very narrow, the right to marry, the right to appropriate, those types of things. And if one fundamental right runs into the Registration Act, then the fundamental right is going to be given priority versus the rational basis of the Registration Act because we're not talking about fundamental rights here. So I'm not suggesting that there could never be a parameter. There certainly can, and it's certainly something that the legislature is going to be looking at based on this task force report. We're in a case before the United States Supreme Court right now with regard to the First Amendment right. Yeah, that's exactly true, the First Amendment. But in that case, that state bans sex offenders from all social media. Illinois does not ban. Illinois doesn't require. But that is an example. Right, that is an example where it's going to come up against the First Amendment. It's going to have a high hurdle to try to address the rights applicable in the First Amendment. We don't have that problem. Our Illinois Supreme Court just ruled on that. I didn't cite it as additional authority, but it just came out. Upholding SORA in light of some of the restrictions that we have, they're not as extreme. But once they get that extreme, again, they're running into those rights in the First Amendment. The defendant didn't go through all the Mendoza-Martinez factors. I can certainly go through those. Those are all in the brief. Essentially, I would point out to the court one case, and I think it's an important case, and that is Kansas v. Hendricks. Kansas v. Hendricks is a 1997 United States Supreme Court case, and it holds that restricting the freedom of those deemed dangerous, it's a sexual violent predators case out of Kansas, is a legitimate non-punitive governmental objective, and indefinite detention under civil commitment statute did not render the civil law punitive. So if indefinite civil detention does not render a law punitive, how registration could do so would run afoul against the Kansas v. Hendricks concept. It's certainly more burdensome. There's more surveillance. There's more consideration. It doesn't run into the level of punitive, and if you cannot get to the level of punitive, you don't get to the level of looking at proportionate penalties because it only applies in criminal penalty cases. And I think that's why all of the cases, Avila Brion, Parker, and Pollard all get to the same place. They're not going to have to reach the constitutional question because they find that it has proper non-punitive legitimate governmental objectives, and at the point of the sentencing and at the point of all those cases were sentencing cases, trying to raise them in that context, the court said, we don't even have to reach the constitutional question. It's simply not punitive. I think on the due process, I've already talked about the potential for fundamental rights and rational basis. I would point out all three of them, Avila Brionis, Parker, and Pollard also face those questions. All of them found there was no substantive due process violation consistent with the Illinois Supreme Court's rulings. All of them found no procedural due process violation. Why? Because risk assessments are not relevant to the scheme that's set up by the Illinois legislature, and the procedure has to be relevant. So that question's already been answered by the Supreme Court of Illinois, and it's answered again and again by Avila Brionis, Parker, and Pollard. So I welcome any other questions that the court may have and ask this court to find the sex offender registration act constitutional. Thank you very much. Thank you. I just have three points to make. So the SOTA statutory scheme as it exists now does involve banishments. Although it doesn't involve a total banishment of Internet usage, it involves banishments from parks, from daycare centers, from buildings with daycare centers or schools. And, in fact, recently the appellate court decided that a total banishment of a sex offender from a public park is overbroad and violates substantive due process in the case of People v. Papatone, which I was allowed to cite as additional authority by this court. So that's a perfect example. And if you apply that logic to all the other banishments associated with the SORA sentencing scheme, they fall like dominoes. They're all overbroad. They all potentially punish innocent conduct in that same fashion. And relatedly, in terms of the fundamental rights argument, we argued both that there are fundamental rights involved. Counsel stated that we argued that it was a fundamental right not to register. That's not exactly what we stated. We said that the registration requirements and the restrictions placed on the defendants affect the fundamental rights of travel, of liberty, and of property concerns. And, in fact, the Supreme Court's decision in J.W. speaks of that banishment as it relates to a fundamental right to property and travel. In that case, the Supreme Court did decide that juvenile SORA was constitutional but then went on to consider the total banishment that the trial court had imposed on the juvenile defendant from entering a suburb, from even going into the suburb. And in that case, the Illinois Supreme Court said, yeah, that involved a liberty interest and that was overbroad. And so it's the same kind of analysis that we're asking this court to consider. And the Illinois Supreme Court is, you know, as that case indicates, is on board in determining the overbroad of a statute, even when the legislative purpose was laudable, that we have to look, take it a step further and determine whether the means, whether under the strict scrutiny test or the rational basis test, we would contend that the means by which the legislature is attempting to establish its purpose is not rationally related. And then finally, with respect to standing, I would just like to direct the court to some earlier findings in Avila Brionis and Pollard in which the court has said, yes, there is standing, and even though the defendant hasn't technically violated some of those banishment laws yet, he, or hopefully never, he's subjected to them. And the fact that a party may be forced to alter his behavior so as to avoid penalties is in itself a hardship. And so for those reasons, there is standing to attack all of the restrictions and the regulations and the burdens imposed on Mr. Mondy by the SOAR sentencing scheme. And for those questions, we ask this court to find SOAR unconstitutional as applied and facially. Thank you. I appreciate the briefs and the arguments, counsel. Both did an excellent job, as they usually do. Take the case under advisement, and we stand adjourned. Thank you. Thank you.